(160 App. Div. 315)

## SECURITY BANK OF NEW YORK v. FINKELSTEIN.

(Supreme Court, Appellate Division, First Department.   December 31, 1913.)

1. LIMITATION OF ACTIONS (§ 163*)—PART PAYMENT—EFFECT.

A payment of either principal or interest, made by a debtor, gives rise to an implied promise, or justifies an inference of a new promise on his part at that time, in the absence of evidence showing that he disclaimed the intent to have his act given that effect, to pay the balance of the indebtedness, and limitations commence to run from that time on the new promise.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 642–647; Dec. Dig. § 163.*]

2. LIMITATION OF ACTIONS (§ 155*)—PART PAYMENT—BY WHOM MADE.

To prevent the running of limitations, a part payment, if not made by the debtor, who pleads the statute, must be made by his agent, clothed with sufficient authority to disclaim for him any intention to have the effect given the payment which, by legal inference or presumption, would otherwise attach thereto, and who fails to so disclaim, or the payment must be ratified by the debtor.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 623–630; Dec. Dig. § 155.*]

3. LIMITATION OF ACTIONS (§ 155*)—PART PAYMENT—BY WHOM MADE.

Where the maker of a note assigned as collateral security for its payment a deposit in an insolvent bank, the receiver of such bank, in paying the dividends on such deposit to the holder of the note, was not the maker's agent; and hence such payments did not justify a presumption or inference that a new promise was then made by the maker to pay the balance owing on the note.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 623–630; Dec. Dig. § 155.*]

4. LIMITATION OF ACTIONS (§ 155*)—PART PAYMENT—BY WHOM MADE.

Where the maker of a note, as collateral security for its payment assigned his deposit in an insolvent bank with authority to the payee to collect and apply such deposit on the note, the payee, in receiving and applying dividends from the receiver of the bank, was not the agent of the maker, since it was acting in its own behalf, and it was not necessary to perform any act in the name of the maker; and hence such payments were not made by the maker's agent so as to justify the inference of a new promise to pay the debt.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 623–630; Dec. Dig. § 155.*]

5. LIMITATION OF ACTIONS (§ 155*)—PART PAYMENT—BY WHOM MADE.

Where the maker of a note, who assigned his deposit in an insolvent bank as collateral security for its payment, with authority to the payee to collect and apply such deposit on the note, was not consulted by the payee respecting the appropriation of dividends on such deposit to the payment of the note, but was merely informed thereafter that the dividends had been received and so applied, his failure to protest against such application was not such a ratification thereof, as matter of law, as amounted to a new promise to pay the balance of the debt, since he had no standing to protest against the doing of that which the payee had a right to do, nor was he required to disclaim the effect on the statute of limitations of an act not performed by him; and hence the jury's finding that there was no ratification would not be disturbed.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 623–630; Dec. Dig. § 155.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. LIMITATION OF ACTIONS (§ 48*)—CONTRACTS—NEW OR SEVERABLE CONTRACT.
A note recited that the maker had deposited with the payee as collateral security an assignment of moneys due or to become due from an insolvent bank, in which the maker had a deposit, or its receiver, with authority to the payee, without demand of payment, advertisement, or notice, to sell the whole or any part thereof at any broker's board or at public or private sale, and, after deducting all costs and expenses, to apply the residue on the note, and that the maker agreed to remain liable to the holder of the note for any deficiency. The assignment recited in the note assigned all money due or to grow due from such bank or its receiver, and gave the payee power to ask, collect, etc., such money or any part thereof, and provided that, if the amount paid by the bank or the receiver should not be sufficient to pay the amount of the note, the maker would pay any deficiency thus arising. *Held*, that neither in the note nor the assignment was there any such promise to pay the deficiency, separate and apart from the promise to pay the note, as would support an action brought after an action on the note was barred by limitations, but within six years after the amount of the deficiency was ascertained by the application on the note of the last dividend received from the receiver.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 259–265, 351; Dec. Dig. § 48.*]

7. PLEADING (§ 380*)—REVIEW—THEORY OF ACTION.
Where the complaint in an action stated a cause of action on a note, the case was tried on that theory, there was no proof that no more could have been than was realized under an assignment of a bank deposit as collateral security, and it did not appear that there was not some other defense to an action on the assignment, the action could not be maintained as one on a promise in the assignment to pay any deficiency.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1053, 1054, 1070–1077; Dec. Dig. § 380.*]

Ingraham, P. J., and Hotchkiss, J., dissenting.

Appeal from Appellate Term, First Department.

Action by the Security Bank of New York against Herman Finkelstein. From a determination of the Appellate Term affirming a judgment on a verdict for defendant and an order denying a new trial, plaintiff appeals. Affirmed.

See, also, 76 Misc. Rep. 461, 135 N. Y. Supp. 640; 156 App. Div. 939, 141 N. Y. Supp. 1145.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Morgan J. O'Brien, of New York City, for appellant.
Charles Goldzier, of New York City, for respondent.

LAUGHLIN, J. This is an action on a promissory note made by the defendant on the 3d day of January, 1906, for $2,005.35, payable on demand to the order of the plaintiff under its former name, which was the Fourteenth Street Bank, with interest, to recover a balance of $375.67. The action was commenced on the 12th day of February, 1912. It is alleged that there were payments made to apply on the note as follows: January 8, 1906, $502.67, June 13, 1906, $751.34, and March 28, 1907, $375.67. The allegations with respect to these payments were put in issue by the answer in which the statute of limitations was also pleaded. The payments made, which were thus put in issue, were dividends received by the plaintiff from the receiver

of the Cooper Exchange Bank, under an assignment, as collateral security for the note, of defendant's claim against said bank as a depositor.

The points presented by the appeal are whether either of these last two payments made on the note gave rise, by implication or presumption of law, to an implied promise on the part of the defendant to pay the balance, on which the statute of limitations would commence to run anew from that time, and whether plaintiff is entitled to recover on the theory of an agreement on the part of the defendant to pay the deficiency after the application of the amounts collected on the collateral security. It was a long-form collateral security note such as is in use by banks. It is therein recited that the maker has deposited with the bank, as collateral security for payment, an "assignment of moneys due or to become due from the Cooper Exchange Bank" or its receiver, with authority to the payee or its assigns without demand of payment, advertisement, or notice of sale, in the event of nonpayment, to sell the whole or any part thereof at any broker's board or at public or private sale, "and after deducting all costs and expenses for collection, sale and delivery to apply the residue of the proceeds of such sale, or sales, to pay any or all" of defendant's liabilities to the bank, and to return the surplus to the defendant. Immediately after the provisions authorizing the assignment or sale of the collateral, the note contains the following:

"And the undersigned agrees to be and remain liable to the holder hereof, for any deficiency. It is further agreed that any moneys or property at any time in the possession of the said bank, on deposit or otherwise, belonging to or at the credit of any of the parties liable hereon to said bank, may at any time, at the option of said bank, be appropriated and applied as a payment on account of this note or the indebtedness evidenced hereby, and on account of any other indebtedness or liability of the parties hereto to said bank, whether this note or any such indebtedness is then due or not due."

The assignment which it is recited in the note had been deposited with the plaintiff as security therefor was dated and acknowledged on the 14th day of November, 1905. It recites a consideration of $1 for which the defendant assigned to the plaintiff and to its successors and assigns "any and all sums of money now due or to grow due" upon his claim against the Cooper Exchange Bank or its receiver, amounting to $3,006.35, which accrued to him as a depositor, and that he gave to the plaintiff "full power and authority, for its own use and benefit," but at his expense, "to ask, demand, collect, receive, compound and give acquittance for the same, or any part thereof," and in his name "or otherwise to prosecute and withdraw any suits or proceedings at law or in equity therefor." It is further recited that the assignment is given as collateral security "for an advance or advances" made to the defendant by the plaintiff "on account of said claim or demand." It is further therein provided that "when the amount of said debt or claim shall have been collected" by the assignee, it should pay over to him the surplus "over and above the amount of any advance or advances with interest thereon" made by the assignee to him "on or on account of said claim or demand." The final sentence of the assignment provided that "if the amount paid by the Cooper

Exchange Bank, or the receiver thereof," on the claim assigned, "shall not be sufficient to pay the amount of the advance or advances and interest thereon, and any and all costs and expenses incurred in the collection of the same by the Fourteenth Street Bank, then in that event I hereby agree to pay any deficiency thus arising." It does not appear when the doors of the Cooper Exchange Bank were closed, nor whether prior to that time the defendant had a deposit account with the plaintiff, but we are informed by the brief of the learned counsel for the appellant that the decision in this case will be a precedent for a number of other like cases pending, arising out of the plaintiff's making like advances to other depositors of the Cooper Exchange Bank on their notes secured by an assignment of their old accounts, "thus enabling such depositors to continue business with banking facilities."

It is contended by the learned counsel for the respondent that the assignment was made as collateral security for a prior indebtedness. That argument is predicated on the date of the assignment and the recitals therein, the material parts of which have been set forth. There is no evidence, unless it may be inferred from the recitals in the assignment, that there was any prior indebtedness on the part of the defendant to the plaintiff. It is fairly to be inferred from the record, however, that the assignment was delivered as security for this note, for the plaintiff called its former cashier, through whom, evidently, the transaction was negotiated with the bank, and asked him whether the defendant on January 3, 1906, made "this note and assignment to your bank." Whereupon counsel for the defendant said, "That is admitted, your honor." The court also stated that it was admitted, but defendant's counsel then said, "Not on that one point; I want to bring that out." According to the record, the question was not pressed further, and it would seem that the fact sought to be proved was taken as admitted.

The plaintiff showed payments made on the note as alleged, and that the source of the payments was dividends received from the receiver of the Cooper Exchange Bank. The plaintiff also showed that the last payment left a balance of principal unpaid of $375.67. The cashier of the bank testified in substance that at the time each payment was made, he, representing the bank, informed the defendant that the dividend had been paid and applied on the loan; that the defendant seemed gratified with the collections, and expressed the hope that "we would be able to get it all"; that the defendant, being a depositor, frequently called at the bank and talked with him; that on the 28th day of October, 1908, defendant called at the bank on another matter, and was informed by him that no dividends, other than the three, the last of which was paid on the 28th of March, 1907, had been paid by the Cooper Exchange Bank, and that the defendant said "he was sorry, and he hoped we would win out finally; those were his exact words"; and that in February, 1909, the defendant inquired concerning the prospects of anything further being realized from the Cooper Exchange Bank, and received no encouragement.

[1] The effect, on the running of the statute of limitations, of the

payment of principal or interest is declared by judicial decisions, but there is no statutory provision governing it. The only statutory reference to it is contained in section 395 of the Code of Civil Procedure, which is as follows:

"An acknowledgment or promise contained in a writing, signed by the party to be charged thereby, is the only competent evidence of a new or continuing contract, whereby to take a case out of the operation of this title. But this section does not alter the effect of a payment of principal or interest."

By judicial decisions a rule, doubtless now as binding as a statutory enactment, has been declared, to the effect that a payment of either principal or interest made by the debtor gives rise to an implied promise, or justifies an inference of a new promise, on his part made at that time, in the absence of evidence showing that he disclaimed the intent to have his act given that effect, to pay the balance of the indebtedness, and that the statute of limitations from that time commences to run on the new promise, renewing the contract. Murdock v. Waterman, 145 N. Y. 55, 39 N. E. 829, 27 L. R. A. 418; Harper v. Fairley, 53 N. Y. 442; Smith v. Ryan, 66 N. Y. 352, 23 Am. Rep. 60; Pickett v. Leonard, 34 N. Y. 175.

[2-4] So rigidly have the courts adhered to the underlying reason for this rule that it has been repeatedly held that a payment by one, jointly or otherwise liable with another on the same instrument, even with the knowledge of the others liable thereon, and whose liability is thus reduced, suspends the running of the statute of limitations only as against himself. Hoover v. Hubbard, 202 N. Y. 289, 95 N. E. 702; Murdock v. Waterman, supra; Gould v. Cayuga Nat. Bank, 86 N. Y. 75; McMullen v. Rafferty, 89 N. Y. 456; and Harper v. Fairley, supra. The only exceptions to the rule that a payment, in order to prevent the running of the statute, must be made by the debtor who pleads the statute are where the payment is made by his authorized agent, clothed with sufficient authority to disclaim for him any intention to have the effect given the payment which, by legal inference or presumption, would otherwise attach thereto, and he fails to so disclaim, or where he ratifies a payment made in his behalf. Pickett v. Leonard, supra; Harper v. Fairley, supra; Smith v. Ryan, supra; Murdock v. Waterman, supra. It is well settled that where the debtor assigns collateral as security for his note or other obligation, his debtor, in making a payment to the assignee on the obligation thus assigned, is not his agent, and that such a payment does not give rise to a new promise on the part of the debtor (Harper v. Fairley, supra; Smith v. Ryan, supra; Acker v. Acker, 81 N. Y. 143); and the same has been held with respect to payment by a general assignee for creditors (Pickett v. Leonard, supra). It has also been held that the creditor in selling and applying the proceeds of collateral to the payment of the obligation is not the agent of the debtor for this purpose. Brooklyn Bank v. Barnaby, 197 N. Y. 210, 90 N. E. 834, 27 L. R. A. (N. S.) 843. In view of these authorities it requires no further argument to show that the receiver of the Cooper Exchange Bank in paying the dividends was not the agent of the defendant, and that there is no legal presumption or inference to be drawn from such

payments that a new promise was then and there made by the debtor to pay the balance owing on the note. Nor can it be successfully contended that the plaintiff itself was the defendant's agent in collecting and applying the dividends. The plaintiff in collecting the dividends acted for itself pursuant to the rights derived by it under the assignment. There was no act involved in the collection or application of the dividends to the payment of the note that it was necessary to perform in the name of the defendant. The money when received became the property of the bank so far as required in paying the note. Its application to the payment of the note was a mere mental operation, or bookkeeping entries, which the officers of the plaintiff performed in its behalf and for it.

[5] It cannot be said as matter of law that defendant ratified the payments as made or applied on the note by the bank, so that they are to be regarded the same as if he brought the money in and paid it over the counter. The question of ratification was submitted to the jury as a question of fact, and was found by them adversely to the appellant. We would not be justified in disturbing the verdict on that point unless, as matter of law, the evidence shows a ratification. The defendant was not consulted with respect to the appropriation of the dividends to the payment of the note. He was merely informed that the dividends had been received and so applied. He had no voice in the matter, and he had no standing to question the right of the plaintiff to make the application. He was not called upon to protest against the doing of that which plaintiff had a right to do; nor was he, since the *act* was not his, required *to disclaim* its effect on the statute of limitations or with respect to a new promise.

[6] The only debatable point is whether the plaintiff is entitled to recover on the theory that the note itself or the assignment contains a promise, separate and apart from the promise contained in the note proper, to pay any deficiency arising after the application of the moneys received under the assignment. In Brooklyn Bank v. Barnaby, supra, the Court of Appeals had this question under consideration in an action on a note in substantially the same form as that in the case at bar, and the collateral was sold and the proceeds applied thereon. There the deficiency could not be ascertained until the sale of the collateral, and on that ground three of the judges maintained that a cause of action on the promise to pay the deficiency did not arise until the deficiency was known; but the majority of the court decided otherwise, and that decision is controlling on this court on that proposition.

[7] I am also of opinion that the action cannot be maintained on the theory of a promise contained in the assignment to pay the deficiency. The action is upon the note, and not on the assignment. This provision of the assignment is not set forth in the complaint. It would now be too late, if the attempt were made—but it is not by counsel for appellant—to read it into it now, for the action evidently was not tried on that theory, and the proof is not sufficient to show that no more could have been realized under the assignment, nor does it appear but that there might have been some other defense had the

action been on the assignment.   However, it would seem doubtful whether the action, if properly brought on the assignment, could be sustained on that theory.   In Brooklyn Bank v. Barnaby, supra, it does not appear that there was a separate formal assignment such as in the case at bar.   On the theory upon which that case was decided, however, I am of opinion that the separate assignment does not materially distinguish the case at bar from it.   The court there held that there was but one promise, and that was the promise in the note proper to pay the indebtedness, and that the promise to pay the deficiency had reference to the unconditional promise to pay the indebtedness and was to be so construed.   These views require an affirmance.

It follows that the determination should be affirmed, with costs.

McLAUGHLIN and DOWLING, JJ., concur.

INGRAHAM, P. J. (dissenting).   The action is on a promissory note dated January 3, 1906, by which the defendant promised to pay to the plaintiff on demand $2,005.35.   There were certain payments on the note; the last payment being made on March 28, 1907.   The action was commenced on the 12th day of February, 1912.   The answer set up the statute of limitations, and the only question presented on this appeal was whether the cause of action was barred.   The answer to this question depends upon whether the last payment credited upon the note was sufficient to take the case out of the bar of the statute.

Section 410 of the Code of Civil Procedure provides that where a right exists, but a demand is necessary to entitle a person to maintain an action, the time within which the action must be commenced must be computed from the time when the right to make the demand is complete.   There are exceptions to this provision which do not apply to the case at bar.   Section 395 of the Code of Civil Procedure provides that an acknowledgment or promise contained in a writing, signed by the party to be charged thereby, is the only competent evidence of a new or continuing contract whereby to take a case out of the operation of this title.   But this section does not alter the effect of a payment of principal or interest.   These are the only provisions of the Code of Civil Procedure that apply.

The facts upon which this question is presented are as follows: The defendant had an account with the Cooper Exchange Bank, which became insolvent and went into the hands of a receiver on the 14th of November, 1905.   By an instrument dated 14th November, 1905, defendant assigned to the plaintiff any and all sums of money now due or to grow due upon his claim against the Cooper Exchange Bank or R. Ross Appleton, Esq., as receiver of the Cooper Exchange Bank, amounting to $3,006.35, which claim accrued to the defendant by reason of his having been a depositor in the Cooper Exchange Bank, with power and authority, for its own use and benefit, but at the defendant's own cost, to ask, demand, collect, receive, compound,

and give acquittance for the same or any part thereof, and further providing that this assignment of claim was given—

"as collateral security for an advance or advances made to me by the Fourteenth Street Bank, East Side Branch, on account of said claim or demand. And it is further understood that when the amount of said debt or claim shall have been collected by the said Fourteenth Street Bank, under this assignment, that said bank shall pay over to me any and all sum or sums of money over and above the amount or any advance or advances with interest thereon made by the said Fourteenth Street Bank, to me, on or on account of said claim or demand. And it is further understood that if the amount paid by the Cooper Exchange Bank, or the receiver thereof, on my aforesaid claim or demand against said Cooper Exchange Bank, shall not be sufficient to pay the amount of the advance or advances and interest thereon, and any and all costs and expenses incurred in the collection of the same by the Fourteenth Street Bank, then in that event I hereby agree to pay any deficiency thus arising."

On the 3d of January, 1906, the defendant made and delivered to the plaintiff his promissory note, whereby he promised to pay to the plaintiff or order $2,005.35 on demand. Upon the trial an assistant manager of the defendant was called as a witness and was asked: "Did he [defendant] on January 3, 1906, make this note and assignment to your bank?" and defendant's counsel stated, "That is admitted." The witness then testified that on January 8, 1906, the plaintiff received, on account of this assignment, $502.67, on January 13, 1906, $751.34, on March 28, 1907, $375.67, that these sums were received from the receiver on account of dividends under the assignment, and that, allowing these payments, there was due on the note $580.34. The witness then testified that on January 8, 1906, he told the defendant that certain dividends had been paid, and the defendant said he was very glad of it, and hoped that the plaintiff would get it all; that in June, 1906, the witness told the defendant that the bank had received a dividend of 25 per cent. and that it had been applied to his loan; that on March 28, 1907, the witness told the defendant that the plaintiff had received from the receiver of the Cooper Exchange Bank another dividend that had been applied to his loan, to which the defendant replied that he was glad plaintiff was getting the money; that on the 28th of October, 1908, the witness told the defendant that no other dividend had been paid, to which the defendant said he was sorry. Upon this testimony both parties moved for the direction of a verdict which the court denied, and submitted to the jury the question whether the defendant ratified the acts of Mr. Clark, the cashier of the plaintiff, when Mr. Clark said to the defendant: "We have received a dividend," or dividends. The court stated to the jury:

"If you believe from all the facts in the case and the circumstances connected therewith that the words used by the defendant were a promise or ratification sufficient to take it out of the statute of limitations, then the plaintiff is entitled to a verdict in the sum of $580.34."

The jury returned a verdict in favor of the defendant, and from the judgment entered thereon the plaintiff appeals.

In the case of Brooklyn Bank v. Barnaby, 197 N. Y. 210, 90 N. E. 834, 27 L. R. A. (N. S.) 843, the Court of Appeals held that, where

the debtor requested the creditor to deliver certain collateral security held by the creditor, and to accept in place thereof $562.50, and the bank delivered the collateral and received the money and credited it on the note, that was a payment by the defendant upon his written request that the plaintiff accept a sum of money in lieu of part of the collateral then held by it, and supported the implication that the defendant intended to acknowledge the obligation of the debt and to make a new promise to pay the balance due; but it was also held that, where the bank upon its own initiative sold some of the collateral which it held, and realized therefrom the sum of $1,775, and applied the amount thus realized to the payment of the debt, that was not such a payment as suspended the statute of limitations. It was said that the effect of a part payment in enlarging the time during which an action may be brought is because a part payment, made on account of a claim, is an acknowledgment by the debtor of his liability for the whole demand, and from this acknowledgment a new promise on his part to pay the residue is implied. The undertaking of the debtor as to the unpaid part of the debt is thus, by a legal presumption, renewed and made to date from the time of the part payment.

"The debtor can always make a new promise, but where circumstances are relied upon to constitute such a promise, it may make a radical difference whether they occurred before or after the debt was barred. In the former case, with a debt still alive, it would require less evidence to create a promise to extent the running of the statute than in the latter case, with a debt barred, to revive the debt and renew the expired period."

There was a strong dissent in that case, based upon the transfer of the collateral obligation, which, after enumerating the security pledged for the payment of the note, said:

"Which [I] hereby authorize said bank or its president or cashier, to sell * * * in case of the nonperformance of this promise, applying the net proceeds to the payment of this note, including interest, and accounting to ———— for the surplus, if any. In case of deficiency [I] promise to pay to said bank the amount thereof forthwith after such sale, with legal interest."

By the minority opinion it was held that the time that barred that obligation was six years from the ascertainment of the deficiency. The majority opinion, after considering some authorities relied upon by the plaintiff, said:

"Quite different is the case at bar, for here the defendant's promise was definite and unequivocal, covering the whole debt, dependent upon no condition or contingency which might relieve him from it, and embracing nothing that the law would not have implied if he had not reduced it to writing. If judicial construction can metamorphose such an indivisible transaction into two or more separate and distinct parts, governed by as many different periods of limitation, we may as well abolish the statute, for it will no longer be the shield of him who is sued, but the sword of him who sues."

So that, accepting this decision as controlling, the question is whether the defendant ever either made a payment, or authorized the acceptance of money by the plaintiff as a payment, upon his obligation from which a new promise to pay the balance due could be inferred. According to the testimony, this agreement of the 14th of November, 1905, and the note in suit were made to the bank on the same day, Jan-

uary 3, 1906. By the note the defendant agreed to pay to the bank on demand the sum of $2,005.35. By the agreement that was delivered at the same time he assigned to the bank a claim against an insolvent bank or its receiver amounting to $3,006.35, expressly giving to the plaintiff power and authority for its own use and benefit, but at the defendant's cost, to ask, demand, collect, and receive some or any part thereof, and in the defendant's name or otherwise to prosecute and withdraw any suits or proceedings at law or in equity therefor. The defendant then agreed that this assignment was made as collateral security for an advance, or advances, made to the defendant by the plaintiff on account of said claim or demand, and that when the claim or demand shall be collected under the assignment, the bank would pay over to the defendant all sum or sums of money over and above the amount of any advance or advances, with interest thereon, made by the said Fourteenth Street Bank to the defendant on account of said claim or demand, and that if the amount paid by the Cooper Exchange Bank or the receiver thereof on the defendant's aforesaid claim or demand against such Cooper Exchange Bank shall not be sufficient to pay the amount advanced with interest, and any and all costs and expenses incurred in the collection of the same by the Fourteenth Street Bank, then in that event the defendant agreed to pay any deficiency thus arising. These two instruments must be read together in determining the exact relation between the plaintiff and the defendant. The note was a demand note; was delivered with this assignment, which recited that the defendant delivered a demand note which represented the money advanced at the time the note and assignment were delivered; the money advanced was advanced to the defendant "on account of said claim or demand" which had been assigned to the bank; the plaintiff was authorized to ask, demand, collect, receive, and give acquittance for the same, or any part thereof, in the defendant's name or otherwise; and the advance thus made on account of the assigned claim was to be paid by the money received from the insolvent bank or its receiver; any surplus accounted for to the defendant, or if the amount received by the plaintiff was not sufficient to pay the amount advanced, the defendant promised to pay. Under Judge Werner's opinions in Brooklyn Bank v. Barnaby, supra, it seems to me that there was here an express authority given by the defendant to the plaintiff to receive the amount from the insolvent bank or its receiver on account of the indebtedness represented by the note, and the receipt of such a payment, the statute being not then a bar, was evidence of a new promise which bound the defendant.

The complaint here expressly alleged the making of the note; the delivery of this assignment of the defendant's claim as depositor against the Cooper Exchange Bank or its receiver, and that thereafter the plaintiff paid to the defendant the sums which it had received as the agent of the defendant from the Cooper Exchange Bank or its receiver, and that such receipts were a payment by the defendant. Here the plaintiff advanced to the defendant a sum of money on account of a claim against the Cooper Exchange Bank or its receiver. It took from him a demand obligation for the repayment of that sum.

The defendant authorized the plaintiff to ask, demand, collect, and receive payments made by the Cooper Exchange Bank, and that any balance received in excess of the amount advanced by the plaintiff to the defendant was to be paid to the defendant, and any deficiency over the amount received was to be paid by the defendant to the plaintiff. The receipt of any part of that demand assigned to the plaintiff was, it seems to me, clearly a payment by the defendant on account of the amount advanced, which implied a new promise to pay what was in excess of the amount received from the Cooper Exchange Bank, and that the defendant's express promise to pay any deficiency related to the credit by the plaintiff of the amount that it received as agent of the defendant from the Cooper Exchange Bank.

I think, therefore, that the cause of action was not barred by the statute, and that the judgment must be reversed. As both parties submitted the right to a verdict to the court and there was no request to submit any question to the jury, I think we should now grant the plaintiff's motion, and direct a verdict for the amount then due, $580.34, with interest from December 11, 1912, together with costs in this court and in the court below.

HOTCHKISS, J., concurs.